**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **BIG G EXPRESS, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:08-cv-0318 |
| ) | |
| **LEVITON MANUFACTURING COMPANY, INC.**[1] ) | Senior Judge Thomas A. Wiseman, Jr. |
| **and AMERICAN INSULATED WIRE CORP.,** ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Plaintiff Big G Express, Inc.'s Motion for Partial Summary Judgment (Doc. No. 69) in which Big G seeks summary dismissal of the affirmative defense of comparative negligence asserted by defendant American Insulated Wire Corp. ("AIW") against non-parties David Oliveira and Janice Evans. The motion has been fully briefed and is ripe for consideration. For the reasons set forth below, the motion (Doc. No. 69) is hereby **GRANTED IN PART AND DENIED IN PART**.

Specifically with respect to the affirmative defense based upon Janice Evans' alleged comparative negligence, AIW now concedes, after having conducted discovery, that the evidence as developed does not support a finding that Evans caused or contributed to the accident. The motion to dismiss AIW's affirmative defense of comparative negligence as to Evans is therefore **GRANTED**.

A basic recitation of the facts is required prior to a discussion of the plaintiff's motion as it pertains to the potential comparative fault of David Oliveira. Defendant AIW, a business incorporated in Rhode Island with its principal place of business in Massachusetts, manufactures wire products. Plaintiff Big G, a Tennessee corporation whose principal place of business is in Tennessee, is a shipper. Sometime before March 5, 2007, AIW agreed to sell a large quantity of insulated wire to a third party (not a party to this lawsuit) located in Tennessee. On March 5, 2007, Big G dispatched its employee Joel Ulmer to AIW's facility to pick up the load of insulated wire. While Ulmer waited in the cab, two AIW loaders loaded

---

[1] All claims against defendant Leviton Manufacturing Company, Inc. have been dismissed without prejudice pursuant to a joint stipulation and agreed order by all parties to this action. (*See* Doc. No. 48.)

nine wooden reels of insulated wire, each weighing over 4,000 pounds, into the Big G trailer. The reels were secured using various lengths and combinations of wooden 4' x 4's, 2' x 4's, wooden "chocks" and nails. AIW's employees were satisfied by the time they finished that the load was adequately secured and should not shift during transit. Ulmer saw the load as he was closing the door and observed that the truck looked full all the way to where the back reel was and appeared to be secured. He also testified that he was "impressed" by the efforts AIW undertook to secure the load. Ulmer closed the trailer doors and sealed the load.

Shortly thereafter, Ulmer departed AIW's facility and headed south on I-95 toward Providence, Rhode Island, a metropolitan area known for heavy, stop-and-go traffic. Within approximately fifteen minutes of leaving AIW's facility, Ulmer encountered a heavily congested area of slow-moving traffic. He was intermittently tapping or "covering" his brake pedal with his right foot with little or no use of the accelerator pedal. Around this time, a vehicle driven by David Oliveira moved into the same lane in which Ulmer was traveling. Like Ulmer, Oliveira was braking more or less continuously. Ulmer, however, testified that he was trying to leave a "space cushion" of a reasonable distance between his truck and the vehicle in front of him, at least up until the time Oliveira allegedly cut in front of him.

As the two vehicles proceeded in tandem, Oliveira purportedly observed an ambulance an ambulance enter I-95 from one of the off-ramps. Although he did not hear any activated sirens, he claims to have observed siren lights flashing. He apparently came to a complete stop in the middle of the interstate, allegedly to permit the ambulance safely to merge onto I-95. Behind him, Ulmer, who did not recall seeing an ambulance, was forced to come to a fairly abrupt stop in order to avoid hitting Oliveira's car. Ulmer estimates he was going about forty miles per hour at the time he had to brake hard to avoid hitting Oliveira. He did not impact Oliveira's car, and there is no suggestion in the record that Ulmer was driving negligently or at an excessive speed. (The truck did not jack-knife, and there were no skid marks on the road.) In any event, when he came to a stop, the 40,000-pound load in the trailer continued accelerating forward approximately twenty feet, breaching the front of the trailer and impacting and compressing the back of the truck cab, seriously damaging both as well as some of the wire reels. No person, fortunately, was injured. According to AIW, Oliveira cut off Ulmer without cause or justification, in

heavy traffic, and then came to a full stop for no apparent reason, thereby forcing Ulmer to brake hard to avoid running over Oliveira's vehicle.

In any event, after the load-shifting occurred, Ulmer climbed out of the passenger-side window of his truck and talked with Oliveira, among others. Oliveira had heard the commotion and wood-breaking noises behind him. He gave Ulmer his business card, exchanged a few words with him, and then told him he had to leave to get to a doctor's appointment. Ulmer recalls that Oliveira was "apologetic." (Ulmer Dep. at 55.) AIW contends that there is a disputed issue of fact as to whether Oliveira was apologetic for having to leave to make it to his appointment, or apologetic for having caused the accident. AIW also insists that there is a disputed issue of fact as to whether Oliveira's act of stopping when he did, causing Ulmer to have to brake heavily, caused or contributed to the load shift.

After Big G filed suit against AIW, AIW amended its answer to assert a comparative negligence defense, naming David Oliveira as a potential comparative tortfeasor. Big G now asserts that it is entitled to summary judgment disposing of that affirmative defense.

As an initial matter, the Court agrees with AIW that Rhode Island law applies to Oliveira's potential liability under Tennessee's choice of law principles. Tennessee applies the Restatement (Second) of Torts' "most significant relationship" rule to determine which state's law will govern a tort claim. *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992). Under this rule of law the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation. *Id.* at 59. The accident occurred in Rhode Island and, at least as to the relationship between Oliveira and the events giving rise to this lawsuit, no other state has a more significant relationship to the litigation.

Regardless, as a general matter, Rhode Island's law pertaining to tort liability mirrors that of nearly every other jurisdiction in this country. The party seeking to prove negligence must "establish a legally cognizable duty owed by [the alleged tortfeasor] to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Willis v. Omar*, 954 A.2d 126, 129 (R.I. 2008) (citations and internal quotation marks omitted). Based on that standard, the Court agrees with AIW that there are material factual disputes as to whether Oliveira was negligent, and as to whether his negligence caused or contributed to the accident at issue. Specifically, there is an issue of fact as to whether Oliveira "cut off" Ulmer without cause, leaving too little space between his

vehicle and the large, heavily loaded truck behind him, as to whether he braked precipitously for no apparent reason, and as to how hard Ulmer was required to brake to avoid hitting Oliveira. Likewise, there is a disputed issue of fact as to whether the hard braking caused or contributed to the shifting of the load of wire reels, and as to whether it was foreseeable to Oliveira that cutting off a large truck could cause an accident of this type.

In sum, material factual disputes preclude partial summary judgment as to the defendant's comparative negligence defense as to David Oliveira. Plaintiff Big G's motion for partial summary judgment is therefore **DENIED** insofar as it seeks dismissal of AIW's affirmative defense of comparative fault as to Oliveira.

It is so **ORDERED**.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge